Gedges and wife, &c. *vs.* Western Baptist Theological Institute, &c.

### APPEAL FROM KENTON CIRCUIT.

Judge MARSHALL delivered the opinion of the court.

1. Robert Kyle, by his will admitted to record in 1825, devised the tract of land on which he then resided, now within the limits of the city of Covington, in the following words: "To my beloved " wife, Sarah Kyle, I give, bequeath, and devise the whole of my " farm on which I now live, both arable and woodland, with all " and singular the appurtenances, &c., for and during the period of

"her natural life; and at the death of my wife, Sarah Kyle, "(should she survive me, or should I survive her, it is to be the "same thing in the end,) I will, direct, and order that the farm "on which I now live, and have lived for a number of years past, "shall be sold at the sound discretion of my executors, in such "way and manner, and at such credits, as they shall' deem most "advisable for the interest and benefit of those to whom I shall "leave the proceeds thereof. The whole proceeds and amounts "of moneys arising from the sale of my said farm when collected, "I order and direct shall be equally and justly distributed, share "and share alike, among my dutiful and affectionate daughters, "Dinah White, Jane Dixon, Mary Long, and Sarah Rich; and "should any of my daughters, above mentioned, die before my "will and testament is carried into complete effect, my will and "command' is, that the child or children of my said daugh- "ter or daughters shall be entitled and receive that part of the "money arising from the sale of said farm, to which the mother "of said child, or mothers of said children, would have been en- "titled had she or they lived to have seen my will and testament "carried into full and complete effect. I direct my executors to "be very careful in laying my farm off in such number of lots "as will best advance the interest of my above named daugh- "ters, requiring of every purchaser at least two good and suffi- "cient securities. And I also invest my executors with full "power and authority to convey the land so sold to the purchaser "or purchasers, by general warranty deed, immediately upon the "payment of the purchase money." In 1835 the widow of the testator with the four daughters, by separate deeds, conveyed their interest in the land to Ezra Going. In 1838 the executor, the only one who had qualified, conveyed to the same individu- al without any sale, and upon no other consideration than that promised to the four devisees, and after the death of Sarah Rich, who died in 1836, and the widow, who died in 1837.

2. A deed from Rich and wife was duly acknowledged by the parties, and deposited for record, and the deed in fact recorded, but the certificate not recorded, but a blank left in the record, after the record of the deed. The certificate of privy examination instead of "Sarah Rich" uses the words "Sarah Going;" the brief mem- orandum of the clerk on the back of the deed being "Sarah Rich." Held—that the name should have been "Sarah Rich" in the certificate, and as the deed was duly acknowledged and de- posited in the proper office for record, in proper time, all the right and title which Rich and wife could pass by such deed, did pass, and that the certificate, so corrected, should be recorded in the blank space left in the record book.

3. Where a will peremptorily directs the sale of land, a court of equi- ty regards the land as converted into money even before the sale. The gift of the proceeds of land, directed by will to be sold, is a legacy, and its transmissibility determined by the rules appli- cable to legacies of money or other personalty. The land direct- ed to be sold is subject in equity to the right of those entitled to the proceeds of the sale or the land itself.

4. Where a legacy is given, subject to be divested upon a contingen- cy, no act of the person to whom it is given upon such contin- gency, by sale or otherwise, can prevent the divestiture upon the happening of the specified contingency.

5. Land directed by will to be sold at the death of tenant for life, and the proceeds divided between the testator's four daughters, if living, if not, the proceeds to be paid to the children of such as may be then dead, a conveyance of the land by such of the legatees, during the life of the tenant for life, who may survive the tenant for life, may be regarded as an election to take the

land—not so where the daughter conveying did not survive the tenant for life, and the legacy vested in her children.

6. Where a legacy is to be paid upon the sale of land, after the death of tenant for life, and the collection of the proceeds of the sale, to the daughters of the testator, if then living, or to their children if they be dead, the sale and conveyance of the land out of which the legacy is to be raised by any of the daughters, before the death of tenant for life, cannot prevent the children of such daughter from succeeding to the right to such legacy, in case she die before the happening of the contingency upon which the right of such daughter was, by the will, to become absolute.

7. When a legacy is given, to be divested in case of the death of the legatee before the happening of a particular contingency, and the legatee does die before the happening of the contingency, there can be no doubt of the effect of the happening of the contingency upon the legacy, and it shall vest as provided by the will in such case.

8. The right of a legatee to take a legacy given, or the land by the sale of which the legacy is to be raised, cannot be exercised except in cases where the legatee, at the time of the election, has the right to receive the money; nor can such election, if made, have the effect to change the direction of a legacy, or convert a contingent into an absolute legacy. (3 *Atkyns*, 679.)

9. The conveyance by Mrs. Rich and her husband did not place her children, upon her death before her mother, who held the life estate, in any worse condition than if it had not been made, and they are entitled, under the circumstances of this case, to the fourth of the value of the land at the date of the conveyance by the executor, in 1838, and interest thereon till paid.

The will of Robert Kyle, admitted to record in the year 1825, contains the following devises, upon the proper construction of which the chief questions involved in the present record mainly depend. "To my beloved wife, Sarah Kyle, I give, bequeath, and devise the whole of my farm, on which I now live, both arable and woodland, with all and singular the appurtenances, &c., for and during the period of her natural life ; and at the death of my wife Sarah Kyle, (should she survive me, or should I survive her, it is to be the same thing in the end) I will, direct, and order that the farm on which I now live, and have lived for a number of years past, shall be sold at the sound discretion of my executors, in such way and manner, and at such credits, as they shall deem most advisable for the interest and benefit of those to whom I shall leave the proceeds thereof. The whole proceeds and amounts of moneys arising from the sale of my said farm, when collected, I order and direct shall be equally and justly distributed, share and

*Case stated, and so much of the will of Robert Kyle as relates to this contest.*

share alike, among my dutiful and affectionate daughters, Dinah White, Jane Dixon, Mary Long, and Sarah Rich; and should any of my daughters, above mentioned, die before my will and testament is carried into complete effect, my will and command is, that the child or children of my said daughter or daughters shall be entitled and receive that part of the money arising from the sale of said farm, to which the mother of said child or mothers of said children would have been entitled, had she or they lived to have seen my will and testament carried into full and complete effect. I direct my executors to be very careful in laying my farm off in such number of lots as will best advance the interest of my above named daughters, requiring of every purchaser at least two good and sufficient securities. And I also invest my executors with full power and authority to convey the land so sold to the purchaser or purchasers, by general warranty deed, immediately upon the payment of the purchase money." Of three executors, named in the will, two refused, and Zaccheus Kyle, a son of the testator, alone qualified. In May and June, 1835, the widow and four daughters of the testator being then all living, one Ezra Going obtained deeds from each of these parties; and the Western Baptist Theological Institute claims by regular derivation of title from Going, and also by deed from Zaccheus Kyle, executor of Robert Kyle, made in August, 1838.

The deed from Rich and wife, bearing date on the 12th of June, 1835, states a consideration of $4,200, of which $2,500 was afterwards secured by mortgage upon two tracts of thirty acres of land, part of the tract devised by Robert Kyle, and on three acres in addition. In 1846, Joseph Rich, the husband of Sarah Rich, one of the devisees of Kyle, filed his bill against the Institute for the enforcement of the mortgage; in answer to which, the Institute, besides contesting the amount claimed to be due, contests the right of Joseph Rich to receive the balance due, on the ground that, under the will of Robert Kyle, the

children of Sarah Rich, of whom four are named, became entitled after her death, to so much of the purchase money for her interest as remained unpaid, though, as the Institute insists, a complete title to the land itself passed by the deed above referred to. This answer is made a cross bill, by which Gedges and wife and others, children of Mrs. Sarah Rich, are brought before the court. They, in answer, disclaim any knowledge of the transactions and deed between their parents and Going, &c., and disclaim any right to the sum due on the mortgage, alleging it to be part of the price agreed to be paid for their mother's interest in the devise or the land, which they contend was wholly at an end by her death before that of the devisee for life ; and making their answer in turn a cross bill, they claim the full benefit of the devise as to one-fourth of the land therein embraced, and alleging that there has been no sale of it, as directed by the will, they pray that it may yet be sold, or that one-fourth of the entire tract be allotted to them, or that the Institute be decreed to pay to them the fair equitable value of one-fourth. The Institute again answers, and resists this claim on every ground of law and fact which can be applied to the case.

This statement of the substance or general effect of the pleadings, which are minute in their allegations, is sufficient to present the basis of the contest, and of the legal questions involved, which will be discussed upon the facts, without further reference to the pleadings, except as evidence of particular facts not otherwise proved.

The deeds to Going, whereby it is claimed that the interest devised to the four daughters of Robert Kyle was vested in him, are not in this record, except that from Rich and wife. There is enough, however, in the pleadings on both sides, to establish their existence and import. And from the recitals in the deed from Going to the Baptist Education Society, it may be assumed that they bear date, the first on the 25th of May, 1835, the second on the 1st of June, 1835, and

the remaining two, of which that from Rich and wife is one, on the twelfth day of the same month, which is in fact the date of this last named deed. It may also be assumed that these deeds passed such interest as the grantors had and could convey, and that they did, in fact, put Going completely in the place and invest him with such rights as the grantors had, either in the land or its proceeds, whether as heirs or as devisees of Robert Kyle.

The deed from Rich and wife is indeed objected to on the grounds—1. That the certificate of privy examination is defective; and 2. That although the deed was duly recorded, the said certificate never was recorded. The objection to the certificate is that it inserts the name Sarah Going, and not Sarah Rich, as the person privily examined, &c. But as it describes the deed as being from Joseph Rich and Sarah his wife to Ezra Going, and after stating the acknowledgment "by the said Joseph Rich" goes on to say, "and the said Sarah Going being examined," &c., we are of opinion that the word Going being obviously inserted by mistake instead of Rich, and the certificate being sufficient without either of these words, and containing enough on its face not only to show but also to correct the mistake, the word Going should be disregarded, as being unnecessary and repugnant, and as therefore not vitiating a certificate which would be complete and valid without it. This conclusion is corroborated by the brief minute of the acknowledgment indorsed on the deed.

The second objection is, in our opinion, equally untenable. For as it is the established doctrine, that if a deed be properly certified to pass the title of a *feme covert*, and be lodged by the grantee for record in the proper office, in due time, which is all that he can do, it is effectual for all the purposes of a recorded instrument, even against the *feme covert* grantor, though neither the deed. nor certificate be in fact recorded, it must follow that if the deed is in fact recorded in due time, it effectually binds the *feme*, though

GEDGES AND
WIFE, &c.
vs.
WESTERN BAP.
THEO. INS. &c.

2. A deed from Rich and wife was duly acknowledged by the parties, and deposited for record, and the deed in fact recorded, but the certificate not recorded, but a blank left in the record, after the record of the deed.— The certificate of privy examination instead of "Sarah Rich" uses the words "Sarah Going," the brief memorandum of the clerk on the back of the deed being "Sarah Rich." Held— that the name should have been "Sarah Rich" in the certificate, and as the deed was duly acknowledged and deposited in the proper office for record, in proper time, all the right and title which Rich and wife could pass by such deed, did pass, and that the certificate, so corrected, should be recorded in the blank space left in the record book.

GEDGES AND
WIFE, &c.
vs.
WESTERN BAP.
THEO. INS. &c.

the certificate remains unrecorded. The certificate on the original deed shows that the deed was presented or lodged for record, and recorded, in due time, in fact on the day of its date, when the certificate purports to have been made. The failure of the court to record the certificate with the deed, whether proceeding from mere negligence, or from a discovery of the mistake above mentioned, and a consequent doubt as to what he should do, cannot prejudice the rights of the grantee, or impair the validity of the deed. The certificate, as it stands, may and should be still recorded in the blank space which appears to have been left for it in the deed book of the clerk. The deed from Sarah Kyle bears date on the 13th day of June, 1835, and in consideration of $125, to be paid to her annually during her life, and in the month of March in each year, conveys to Going her interest and estate in the land, with the condition that, should there be a failure at any time to pay said sum, at the period stipulated, the deed should be void. Under this deed Going acquired the possession, which has ever since been held under the title derived from him. In the fall of 1836, Mrs. Sarah Rich died, before her mother, who died in the fall of 1837. In August, 1838, Zaccheus Kyle, as executor of Robert Kyle, executed a deed purporting to convey the land, under the authority of the will, to the Baptist Theological Institute, for the recited consideration of $13,000. But no part of this sum was ever paid or intended to be paid to him. It appears to have been the aggregate of the several sums which formed the consideration of the respective deeds of the four daughters of Robert Kyle, the testator, which was, doubtless, the sole cause of its being inserted in the deed from the executor. But although the executor, in making this deed, professed to act under the clause of the will relating to this land, he had done nothing else under that clause. He had made no sale of the land, either in lots or in gross. He had secured no purchase money, had received none, and was to receive none.

His deed, made in utter disregard of the limitations by which, whether advisory or peremptory, the testator had attempted to control his action, was evidently made solely in consideration of the previous sales and conveyances by the testator's daughters and their husbands, and was obtained by the Institute for the mere purpose of confirming those sales, and perfecting the title claimed under them. And if, as may for the present be assumed, it passed the legal title, it passed it to grantees who, being chargeable with full knowledge of the will and of all the facts above stated, took it subject to all the equities growing out of the will and the facts.

Recurring to the will, we find, first, a life estate in the land given to the surviving wife of the testator; second, a peremptory direction that after the death of the wife his executors shall sell the land, and distribute the proceeds, *when collected*, equally among his four daughters; third, a direction equally peremptory, that if either of said daughters should die before the will is carried into complete effect, her children shall receive the share which she, if living, would have received; and fourth, the executors are to secure the purchase money; to divide the land as may best promote the interest of the daughters; and to convey to the purchasers on receiving full payment.

The direction to sell the land being peremptory, a court of equity regards it as converted into money, even before a sale. Whether it should be so regarded, for all purposes, before the period at which a sale may be made under the will, we need not inquire, because it is not the land that is given to the daughters or their children, but the money to arise from its sale. And whatever may become of the legal title to the land, it is subject, by the will, to the power of sale given to the executors, and is subject, in equity, to the right of those who may be entitled to the proceeds, to dispense with the sale and take the land itself. The gift of the proceeds, is, however, a legacy, the right to which, and its transmissibility, are to be determin-

---

GEDGES AND WIFE, &c.
*vs.*
WESTERN BAP. THEO. INS. &c.

---

3. Where a will peremptorily directs the sale of land, a court of equity regards the land as converted into money even before the sale. The gift of the proceeds of land, directed by will to be sold, is a legacy, and its transmissibility determined by the rules applicable to legacies of money or other personalty. The land

GEDGES AND
WIFE, &C.
vs.
WESTERN BAP.
THEO. INS. &C.

directed to be sold is subject in equity to the right of those entitled to the proceeds of the sale or the land itself.

4. Where a legacy is given, subject to be divested upon a contingency, no act of the person to whom it is given upon such contingency, by sale or otherwise, can prevent the divestiture upon the happening of the specified contingency.

5. Land directed by will to be sold at the death of tenant for life, and the proceeds divided between the testator's four daughters, if living, if not, the proceeds to be paid to the children of such as may be then dead, a conveyance of the land by such of the legatees, during the life of the tenant for life, who may survive the tenant for life, may be regarded as an election to take

ed, chiefly if not altogether, by the rules applicable to legacies of money, or other personalty.

In this, as in many other cases which have come before this and other courts, there is no gift to the legatees but in the direction to distribute the proceeds of the land ; and the question has been elaborately argued whether this legacy vested in the daughters immediately upon the death of the testator, or whether it was wholly contingent until the time of distribution or enjoyment. But as it is conceded, and is entirely obvious, that in consequence of the limitation over in case of the death of any of the daughters before the will should be carried into complete effect, the legacy as to each one, if originally vested, vested *sub modo* only, and was subject to be divested on that contingency, it is manifest that, however binding upon the legatee herself, or upon those claiming under her, her acts done before the final determination of the contingency might be, no such act, and no right derived from her, could prevent the consequences of an adverse determination of the contingency, or prevail over the rights which, in that event, were to take place of hers, and become vested under the will.

If, at the date of the deeds from the four daughters of the testator to Going, their right to the proceeds of the land had become absolute, and free from the contingency by which, under the will, it might be defeated, then those deeds professing to convey the land, in virtue of the legacy or devise in the will, and being executed by the daughters and their husbands might be regarded as an effectual election to take the land instead of the money, and as sufficient to transfer the equitable right to the land to the grantee. And if it be conceded that these deeds, though made before the right of the grantors became absolute, would operate with like effect, so far as their right afterwards became absolute; it is obvious that the death of any of the female grantors, while the right remained subject to contingency, would make the conveyance of her interest or in her right wholly in-

operative, and that her children would, as substituted legatees, have rights paramount to those of her grantee.

In determining the effect of the deeds then, it is only material to inquire at what period, or upon what event or contingency, was the right of the daughters, or any of them, to the proceeds of the land to become absolute, or to be defeated. The will answers in general terms that this was to be determined by the fact of all being alive when the will should be carried into complete effect, or of some being dead before that event. But what is meant by the will being carried into complete effect? The will, taken literally, answers, by a sale of the land after the death of the testator's wife, and a distribution of the proceeds, *when collected*, among the four daughters. If any of them should die before that event, then the will would not, in respect to her, be literally carried into complete effect, and her children would be entitled to take what she would have taken.

According to the letter of the will, it was the intention of the testator that the money arising from the sale of the land should be paid in equal portions to his four daughters. And nothing short of the collection of the money and its distribution among them would have carried his will, with respect to them, into complete effect. The death of any one of them, before this should be effected, was therefore the contingency on which her children were to take her place as legatees, entitled to receive what she had not received of her share. And as, by the will, the sale, the proceeds of which were to be collected and distributed among the daughters, could only take place after the death of the widow, the decease of any of the daughters during the life of the widow necessarily preceded and prevented the effectuation of the will as to her, and came certainly within the terms and meaning of the contingency upon which the legacy intended for her was to be vested in her children. If there had been no attempt to prevent a sale, and if one had

GEDGES AND WIFE, &c. *vs.* WESTERN BAP. THEO. INS. &c.

the land—not so where the daughter conveying did not survive the tenant for life, and the legacy vested in her children.

6. Where a legacy is to be paid upon the sale of land, after the death of tenant for life, and the collection of the proceeds of the sale, to the daughters of the testator, if then living, or to their children if they be dead, the sale and conveyance of the land out of which the legacy is to be raised by any of the daughters, before the death of tenant for life, cannot prevent the children of such daughter from succeeding to the right to such legacy, in case she die before the happening of the contingency upon which the right of such daughter was, by the will, to become absolute.

GEDGES AND
WIFE, &c.
vs.
WESTERN BAP.
THEO. INS. &c.

7. When a legacy is given, to be divested in case of the death of the legatee before the happening of a particular contingency, and the legatee does die before the happening of the contingency, there can be no doubt of the effect of the happening of the contingency upon the legacy, and it shall vest as provided by the will in such case.

actually taken place after the death of the widow, the right of Mrs. Rich's children to the one-fourth of the proceeds, which had been intended for her, could not have been doubted. Nor are we prepared to admit that if Mrs. Rich had died after the death of her mother, but before a sale of the land, or after the sale, but before the collection of the proceeds, or after the collection and before the distribution, her children would not, in case the sale had been made as directed, have been entitled, under the will, to whatever part of her fourth she had not received.

It is indeed said that more certainty is requisite in the description of a contingency by which a vested estate or legacy is to be divested, than of one on which an estate or legacy is to vest; which, if it be a rule, seems to present the only material ground of distinction, in a case like the present, between a legacy wholly contingent and one which is vested *sub modo,* and liable to be divested on a contingency. Upon the ground of this rule, it is argued that the death of one of the daughters before the collection, or before the distribution of the money arising from the sale, is not a proper or sufficient contingency for divesting a vested legacy; and authority is cited to show that the death of the primary legatee before he might have received the legacy, though made in the will the contingency on which the legacy is to pass over, has been held to be too vague and indefinite to terminate the interest of the first legatee. But whatever may be the soundness of the rule, or the propriety of its application to the collection or distribution of the proceeds of the sale, or even to an actual sale, as the event in reference to which the previous death of one of the daughters would make the contingency on which the legacy is to pass over, it is not and cannot be questioned that when it appears certainly from the will, that upon the death of the first named legatee before the death of another designated individual, the testator intended and has provided that the legacy shall vest in a different legatee, such a contingency

is sufficient either to prevent the vesting of a legacy previously contingent or to divest and vest in the substituted legatee a legacy previously vested, but made subject to the contingency. All that can be requisite to the sufficiency of the contingency, in either case, is that it shall be so described as, upon the facts actually occurring, to leave no doubt whether the case has happened for which the will intended to provide, and that in order to give effect to the contingency when it does happen, it must be certain, upon the will, what, in that case, the testator intended to provide. And if, in the case which has occurred, there be no doubt upon either of these points, the circumstance that in other possible cases which might have occurred, it would have been doubtful whether the case provided for had happened, or what the testator intended with respect to it, furnishes no reason for not giving effect to the intention clearly expressed in reference to the case which has actually happened, and is certainly provided for.

In the case of *Elwin* v. *Elwin*, 8 *Vezey*, 547, the testator directed his land to be sold as soon as might conveniently be after the death of his wife, to whom he gave a life estate in it, and directed the proceeds to be divided equally among his five nephews (naming them) *in case they should be then living*, but in case any of them should die before the sale should be completed, leaving issue, then his share was given to his issue. The widow died in December, 1797; one of the nephews died in June, 1798. The sale was not made until August, 1799. The question was whether the share intended for the deceased nephew passed on his death to his personal representatives, by operation of law, or to his children, by operation of the will; or, in other words, whether it had vested in him absolutely before his death. It was argued that the sale might have taken place immediately on the death of the widow, and that it was impossible to conjecture what was meant by the words "at such time as the sale shall be completed." But Sir William Grant,

GEDGES AND
WIFE, &c.
vs.
WESTERN BAP.
THEO. INS. &c.

Master of the Rolls, conceiving that the intention of the testator was clearly expressed, and that he was bound by it, pursued the words of the will as applicable to the case which had occurred, and decided that the children of the deceased nephew were entitled to the legacy. The difference between that case and this, so far as regards the question of the legacy being vested in the nephews, is, that here the gift to the daughters is in the first instance absolute, and the contingency on which their children were to take is afterwards expressed; whereas, in the case of *Elwin* v. *Elwin*, the contingency is attached to the first gift. And the Master of the Rolls seems to have decided that the legacy did not vest in the nephews until the sale.

But in the case of *Faulkner* v. *Hollingsworth*, stated at large in the judgment delivered by the Master of the Rolls in *Elwin* v. *Elwin*, 8 *Vezey*, *p.* 559, the testator devised his land in trust to be sold, and the proceeds to be applied first to the payment of debts which the personal estate was insufficient to pay, and the residue to be divided into four equal parts among his two sisters, and his nephews and nieces, and then stated this proviso, that if his sister, E. Faulkner, should die before said estate should be sold, and the purchase money *received by his trustees*, then her share should be paid equally to her children, naming them; and if his sister, R. Allen, should die before the estate sold, and the money received, her share should go among all his nephews and nieces. The sale appears to have been in the progress of negotiation for about two years, during which the sister, E. F., died, about six months before it was completed. The sister, R. A., was alive at its completion and executed a formal receipt to one of the executors of her brother for £3,000, which, however, was not paid to her, "but she took it so." It was admitted, and Sir William Grant takes it to have been in effect decided, that the children of E. F., who certainly died before the sale was consummated, were entitled to her fourth part, but that the executor of R.

A., who died after the sale, but as it would seem before the proceeds were received, was entitled to her part, in exclusion of the ten nephews and nieces, who took nothing, because the contingency had not occurred on which R. A.'s part was given to them.

In this last case, as in the one before us, the first bequest was in terms absolute, and the contingency is attached to the subsequent bequest over, which makes the case in that respect completely analogous to the present one. If it be said that the legacy in that case was contingent, because upon the whole will it was uncertain who would be entitled to it until a sale was actually made, the same reason would prove the legacy to have been contingent in the present case. And if it be said that the legacy was vested by the terms of the first bequest, but was by the will subject to be divested and to pass to another, by the death of the legatee before an actual sale and receipt of the proceeds, the case decides that upon the happening of that contingency the vested legacy was divested, and became absolutely vested in the substituted legatees. But if effect may be given to the death of a legatee of the proceeds of a sale directed by the will, happening before a sale is actually made, though after it might have been made, under the will, and if the happening of such contingency will prevent a legacy dependant upon its not happening from ever vesting, or will divest one already vested, but subject to be divested upon that contingency, much more must effect be given to the death of a legatee before the death of another designated individual, when that is expressly made, or certainly included in the contingency, which, according to the terms of the will, either prevents the vesting of a legacy or divests one already vested. For while it might be said in case the first legatee should live until after a sale might have been made according to the will, but dies before an actual sale, that the testator did not intend to subject his interest to the caprice, or negligence, or unfriendly feeling of the ex-

GEDGES AND
WIFE, &c.
vs.
WESTERN BAP.
THEO. INS. &c.

ecutor or trustee, there is no room for any such argu-ment when the death of the legatee occurs during the life of a designated individual, upon whose death alone the sale can be made, and thus occurs before a sale could have taken place.

Discarding then all questions which might have arisen if the execution of the will had not been in-terfered with, and the sale had taken place, and if the daughters, being all living at the death of their mother, one of them had afterwards died either be-fore the actual sale, or before the collection, or the complete distribution of the proceeds, we repeat that the death of Mrs. Rich, during the life of her mother; before a sale could rightfully take place, and there-fore before the will was or could have been carried into complete effect, in the mode provided for by the testator, and undoubtedly contemplated by him, as the only mode of carrying it into effect, was an event included in and which completely fulfilled the condi-tion or contingency on which the portion of the pro-ceeds of sale first given to her was to pass to and be-come absolutely vested in her children, and that, ac-cording to the terms of the will, it did so pass to and vest in them. And if Mrs. Rich and her sisters, with their husbands, had merely transferred to Going their respective interests in the proceeds of the sale to take place after their mother's death, the right of Mrs. Rich's children, when the sale should be made, to re-ceive the portion originally intended for her would have been indisputable, and, as we suppose, undis-puted. Because, as she would have died before the will had been carried into complete effect, the right to that portion would, by the plain words of the will, have passed to her children. The daughters could not, by the mere alienation of their right, have chang-ed its quality, or freed it from the contingency to which it was subjected by the instrument to which it owed its creation.

Were the deeds more potential, then, in prevent-ing the effect of the contingency and conferring an

indefeasible right upon their grantee, and in virtually superseding the will, because they professed to transfer not the proceeds of the land but the land itself? It is said, there were two modes of carrying the testator's will into complete effect; one, that which he himself prescribed, of selling the land and dividing the proceeds as directed, the other, that which was pursued by the daughters, in taking the land itself instead of the proceeds. And it is argued that in making their deeds to Going they did elect to take the land, that they did take it by conveying it to him; that their deeds, therefore, conferred on him a right to the land, subject to the life estate of their mother; and that, by the subsequent transfer of the life estate to him, he became invested with the entire right of all parties, whereby the will was completely carried into effect, and his right to the land was freed from all contingency. And it is contended that this execution of the will carried out the substantial intention and purpose of the testator in favor of his daughters, who were manifestly the primary and principal objects of his affection and benevolence.

But the right of election, which is the only source to which the potency claimed for these deeds can be attributed, is not itself a paramount and independent right to which all others must succumb. It is but an incidental, subordinate, and derivative right, dependent upon, and growing out of, the principal or original right of taking that which, by the election, is given up for something else, which was to have been converted, and, but for the election, would have been converted into the thing which, by the election, is given for it. In the present case, where the legacy given consists of the proceeds of land directed to be sold, the right of election properly and effectually exercised, would be the taking of the land instead of the money to arise from the sale as directed. It would, it is true, dispense with the sale as intended by the will, but it would dispense with it by what would be in substance and effect a purchase of the land by

8. The right of a legatee to take a legacy given, or the land by the sale of which the legacy is to be raised, cannot be exercised except in cases where the legatee, at the time of the election, has the right to receive the money; nor can such election, if made, have the effect to change the direction of a legacy, or convert a contingent into an absolute legacy. (3 *Atkyns*, 679.)

the legatee, with the money or legacy intended to have been raised by the sale, and it necessarily involves the right to receive or dispose of that money or legacy which forms the consideration of the purchase. It may be that if the right of the daughters to the proceeds of the sale, when it might be made, had been absolute and indefeasible, their deeds for the land, though executed during the life of their mother, and before a sale could have been made, and before they had any present right of enjoyment, either as to land or money, might have operated, upon the death of their mother, as an election, dispensing with the sale and vesting in their grantee an indefeasible right to the land. The case of *Crabtree* v. *Bramble*, cited from 3 *Atkyns*, 679, and other authorities, giving effect to an election made before the accrual of the right of immediate enjoyment, prove nothing more than this. But no case is, or as we suppose can be cited, which decides or tends to prove that an election by a legatee of money directed to be raised by the sale of land, or by a devise of land directed to be purchased with money, can be in itself effectual to convert a contingent right in the subject directly given, into an absolute right in the subject elected to be taken in lieu of it. And if it be conceded that if Mrs. Rich, as well as her sisters, had lived until after the death of their mother, when a sale might have taken place, they might have dispensed with a sale, and that, by electing to take the land, they would then have carried the will completely into effect, and thus have cut off the ulterior bequest contingent on the death of any of them before the will should be carried into complete effect; and if it be further conceded that if they had all lived until a sale might have been made according to the will, their deeds, though previously made, would have been then effectual as an election to take the land, and would then have operated to vest the absolute right in their grantee, by carrying the will completely into effect before the death of any of them; still

It is impossible to admit, without utterly disregarding the contingent bequest to the grandchildren, and in effect erasing it from the will, that the death of Mrs. Rich, during the life of her mother, and before a sale could have taken place, and before the will could be carried into effect, did not entirely defeat the operation of her deed, and vest one-fourth part of the legacy, with the incidental right of election, in her children. If it be true, as contended, that a chancellor might, on the prayer of the daughters, have sold the land during the continuance of the life estate and subject to it, he could not so far have nullified the will as to disregard the contingency to which the interest of the daughters was subject; and if he could have decreed a sale at all before the determination of the contingency, he must have provided for it in making a disposition of the proceeds. And as he could not free the interest of the daughters from contingency, by ordering a sale of the land during the continuance of the life estate, no more could they effect that object themselves by determining that they would take the land when the life estate should be out of the way, or by deeds purporting to sell and convey it and thus to confer upon their grantee the right to enjoy it upon the termination of that estate.

We have already said that if Mrs. Rich and her sisters had merely transferred their interest in the proceeds of the land, or in the provision made for them by their father's will, the death of Mrs. Rich, before a sale could have been made according to the will, would have rendered her deed ineffectual, because it would have terminated her interest. If this proposition be true, we think it follows inevitably, that although the deeds profess to convey the land itself, yet, as the right to the land was but a consequence of the right to the proceeds of the sale, the death of Mrs. Rich had precisely the same effect upon her vendee's right to the land, as it would have had upon his right to her portion of the proceeds of sale, if that alone had been transferred to him. As

the interest of each daughter in the legacy was certainly subject to be defeated and transferred to her children, upon her death before the will should be carried into complete effect, the first of the two propositions could only be denied upon the ground, either that the daughters could, by merely transferring their interests at any moment after the testator's death, make them absolute, or that a transfer at any time for such consideration as, under the disadvantage of a pending life estate during which the purchaser could derive no actual benefit from his purchase, they or their husbands might receive, would, by reason of the money received for the legacy, be carrying the will completely into effect, and thus make the right of the purchaser absolute.

This would be a third mode of carrying the will into effect, which, as it has not been contended for, we will not stop to consider, further than to say that even if it could be deemed an execution of the will so far as the daughters and those claiming under them were concerned, it would not be an execution of it with respect to the widow, and the provision made for her, which constitutes an essential and important part of the will, which the testator intended should be carried fully into effect before the sale should be made from which the legacy of the daughters was to be paid. And the children of a pre-deceased daughter claiming under the will and not under their mother, might undoubtedly claim the benefit of the contingency as having entitled them to the legacy, notwithstanding the consideration received by their mother or her husband for her interest. We conclude, therefore, that the four deeds of the daughters did not carry the will into complete effect, and did not place their interests in Going's hands out of the reach of the contingency.

But it is contended that as it is manifest that the sale of the land and the legacy to the daughters were postponed until after the death of the testator's widow merely on account of the estate for life given to her,

the will should have the same construction as if it had directed the sale to be made after her death or *other termination of her estate*, and that as her deed to Going conveyed her life estate to him, and thus united it with the title derived from the daughters already in him, the life estate no longer opposed any obstacle to the immediate right to the legacy, or to taking the land instead of the proceeds, and that Going did take it in virtue of the election manifested and made by the deeds to him, so that the will was carried into complete effect during the life of all of the daughters, and the right of Going placed beyond contingency.

Waiving other questions, the assumption that the life estate was extinguished by or in consequence of the conveyance of it to Going, is not admitted. If the conveyance had imported a formal and unconditional surrender, it might be questionable how far the life estate could have coalesced with and merged in such interest as he previously had. But the conveyance was not in form a surrender, nor intended so to operate. It conveys the life estate, it is true, but it reserved an annual payment which was in substance a rent, during the life of the widow, secured upon the land by the condition that if not paid in each year at the time specified, the deed should be void. So far from extinguishing the estate, it kept it alive during the entire life of the widow for the very purpose for which it had been created and appropriated by the will. And the will could not have been carried into complete effect during the life of the widow, because the life estate still subsisted, subject to the provision made for her. Notwithstanding this conveyance by which the widow changed the form of her own enjoyment of the life estate, it still subsisted, and formed an obstacle to the sale, and to the enjoyment of the legacy to be raised by it. The executor could not sell the land free from the incumbrance, as was manifestly intended. The time when the sale might be made under the will had therefore not arrived; consequently the right of the daughters or their alienee to receive

the proceeds of the sale, or to dispense with a sale and take the land, had not become absolute. The sale could not still be made until after the death of the widow. The right to the legacy, therefore, still remained subject to the contingency until after that event, and before that occurred Mrs. Rich died, and the rights of her alienee were at an end.

We do not deem it necessary to pursue the argument further. But it is proper to say, that while we are not sure that the testator's daughters, if they had all been living at the death of his widow, would, under the positive and distinct provisions of this will, have had a right then to elect to take the land, and, dispensing with a sale, to cut off the contingent bequests, we are satisfied that the will could not have been thus carried into effect at any earlier period, not merely because the widow's life estate was not in fact extinguished before her death, but also because the testator has made her death the only event which would authorize a sale, and because we are not prepared to admit that under this will the daughters and their mother, the primary objects of this provision, could, by their concurrent acts, defeat the contingent bequests contained in the will. It is scarcely necessary to say that although the deeds of the daughters and their husbands to Going were effectual to convey the interests of the grantors, yet, obtained as they were during the pendency of the life estate, by private and separate negotiation, upon considerations grossly unequal, and not even yet fully paid, without the aid or sanction of the executor, and without the advantages provided for in the will, they fell far short of securing to the daughters themselves the benefit intended; and although they have broken up the execution of the will, they have not effectuated its substantial purposes.

Upon the whole case, we are of opinion that the children of Mrs. Rich became entitled, by the death of their mother, to one-fourth part of the legacy directed to be raised by the sale of the land upon which

9. The conveyance by Mrs. Rich and her husband did not place her chil-

the testator resided; and the question arises, how is that right now to be enforced and satisfied? The land appears to have been laid off into lots and streets and to a great extent sold out by the Institute, and to form now an integral and populous portion of the city of Covington. What portion of it is retained by the Institute does not distinctly appear, though it may be assumed to be some six or eight acres, which, like the rest of the tract, have been highly improved. The various purchasers and persons in possession are not made parties to this suit. The case, therefore, is not prepared either for a division or for a sale of the portion to which the children of Mrs. Rich set up claim, 'if, under the circumstances, it were proper to assign to the claimants a proportional part either of the land or now to sell it. They seem themselves to consider this impracticable, and they ask their proper portion of the equitable value of the land. And this, which is the only relief that can now be granted in this case, seems also to be, on the whole, the most just and reasonable, as it is also certainly the most convenient.

The will under which these parties claim directs the land to be sold after the death of the testator's widow; the meaning of which is that it should be sold as soon after her death as the executors could, with reasonable diligence, provide for and make a sale in the manner prescribed or recommended. If the land had been divided into lots, the sales would probably have been made at different times, extending through several months, say from six to twelve months after the death of the widow. If a sale had then been made, Mrs. Rich's children would have been entitled to one-fourth of the proceeds; and we think their claim should now be adjusted on the basis of a sale having been made when it might and should have been made, which may be fixed at the date of the deed from Z. Kyle, the executor, to Robins, &c., being about nine or ten months after the death of the testator's widow.

It appears by the later pleadings in the case, that Mrs. Rich left five children, instead of the four who

GEDGES AND WIFE, &c. vs. WESTERN BAP. THEO. INS. &c.

dren, upon her death before her mother, who held the life estate, in any worse condition than if it had not been made, and they are entitled, under the circumstances of this case, to the fourth of the value of the land at the date of the conveyance by the executor, in 1838, and interest thereon till paid.

are parties claiming the legacy. The fifth one, Harriet, died unmarried and without issue, leaving as her heir her father, Joseph Rich, who united in the sale of her mother's interest, and is the complainant in the original bill seeking to enforce a mortgage for a part of the purchase money. The Institute claims that this interest accruing to their vendor enures to its benefit, which is denied in argument on the ground that his deed is without warranty. We need not decide this question. The other children of Mrs. Rich are not entitled to the portion of Harriet, and as Rich does not ask for it, there could be no decree for it against the Institute; and if he did, the claim thus to increase the loss of the Institute would be inequitable. Nor is there any certainty that this interest, though it may not have passed by force of the deed to Going, did not pass by the deed of release executed by Rich to the Institute in 1840.

The four remaining claimants are entitled to four-fifths of one-fourth, that is, to four-twentieths of the fair value of the whole tract of land in question, estimated in August, 1838, with interest thereon from the 10th day of August, 1838, which should be decreed to them accordingly, upon their cross bill against the Western Baptist Theological Institute. In this estimate the enhanced value of the land in consequence of improvements and expenditures made upon it before the 10th day of August, 1838, by those claiming under Going, should not be considered. The estimate should be made as if Sarah Kyle, the widow, had continued to use the tract as a farm until her death, and the executors had then with reasonable dispatch proceeded to the performance of their duties under the will; and it is not to be assumed that they would have prepared the land for sale by the foot by laying it off into streets and building lots, but they would have prepared it in general if not altogether for sale by the acre, in such lots as might have been suitable to the relative condition of the land and the town of Covington, and would have invited

GEDGES AND
WIFE, &c.
vs.
WESTERN BAP.
THEO. INS. &c.

purchasers, and enabled the executors to complete the sale in reasonable time. On these principles some portion of the land might perhaps have been laid off into building lots and sold or offered for sale by the foot.

The record does not enable us to fix the sum which should be decreed against the Institute as the equitable or reasonable value of the land to which the children of Mrs. Rich are entitled; and it will be necessary that the question of value be referred to a commissioner, to be ascertained according to the principles above laid down. For such sum as may be decreed on account of the value of the land, with its interest, the claimants will be entitled to a lien upon so much of it as was the property of the Institute at the commencement of this suit, which should be preferred to the mortgage to Rich. But they should be decreed to release all claim under the will to any part of the land. With respect to the claim of Rich for the unpaid part of the purchase money upon the sale made by himself and wife to Going, it is certainly a hardship that the Institute should have to complete the payment of the consideration which was intended and supposed to be in full satisfaction for one-fourth of the land, and should also have to pay in addition the full value of the same one-fourth. But although the deed of Rich and wife professes to convey one-fourth of the tract as being devised to Mrs. Rich by her father's will, Going, it must be assumed, was acquainted, with the contents of the will, and was therefore apprised of the contingency to which the interest he was purchasing was subject, and as he did not provide against it, he incurred the hazard of the event. He was the agent of the Baptist Theological Society, of which the Western Baptist Theological Institute is the successor, and their equity against Rich is no greater than his would have been, if they had not taken his place. It was proper, therefore, to dissolve the injunction which had been obtained against this claim, with damages, and to

proceed upon the mortgage for its enforcement. But in the final decree upon the mortgage, which does not appear to have been yet rendered, it will be proper to provide for the postponement of the lien of Rich as above directed, so far as relates to the land owned by the Institute at the time the cross bill of the Gedges and their wives, daughters of Mrs. Rich, was filed.

Wherefore the decree, so far as it dismisses the cross bill of Gedges and wife, and other children of Mrs. Rich, is reversed, and the cause is remanded for proceedings and decree in conformity with this opinion. But the decree dismissing the cross bill of the Institute is affirmed. The decree upon the mortgage is interlocutory only.

*Benton & Kinkead* and *Robertson,* for appellants; *Harlan, Morehead & Stevenson,* and *Preston,* for appellees.